(82 App. Div. 72.)

HAWKINS et al. v. MAPES–REEVES CONST. CO. et al.

(Supreme Court, Appellate Division, First Department.   April 17, 1903.)

1. MECHANICS' LIENS—NOTICE OF LIEN—TO WHOM GIVEN.

Laws 1897, p. 577, c. 418, § 5, gives a lien to one furnishing labor or materials for the construction of public improvements, on filing a notice of lien as prescribed in that article.   Section 12 prescribes that such lien shall be filed with the head of the department having charge of the construction, and with the financial officer charged with the disbursement of funds applicable to the contract.   Laws 1894, p. 1751, c. 703, as amended by Laws 1895, p. 747, c. 399, authorizing the construction of a hospital on Gouverneur Slip, provided that the commissioners of the sinking fund should approve the plans, advertise for bids, award the contract, and prescribe the security to be furnished by bidders; but the commissioners of public works were given supervision of the work, and power to notify the contractor to discontinue work in case of any violation of the contract.   *Held*, that a subcontractor's notice of lien should have been filed with the department of public works, and a filing with the department of charities was a nullity.

2. JURY—RIGHT TO TRIAL BY JURY.

Code Civ. Proc. § 3412, providing that, if a lienor fails to establish a valid lien in an action, he may nevertheless recover judgment for the sum due him, is not unconstitutional in depriving the parties of a jury trial, for it may be construed as either entitling the parties, when a personal judgment is desired, to have issues framed and sent to a jury under sections 970 and 974, or to authorize entrance of an interlocutory judgment declaring the lien invalid, and ordering the issues under the contract sent to the jury.

3. SAME—WAIVER OF JURY TRIAL.

Under Code Civ. Proc. § 1009, providing that a jury trial is waived by failure to claim it if the adverse party moves trial without a jury, where in an action to foreclose a mechanic's lien, there was no motion to settle issues or demand for a jury trial on issues calling for a personal judgment a jury trial on such issues was waived.

4. MECHANIC'S LIEN—BOND—CONDITION—COMPLIANCE WITH STATUTE—ESTOPPEL.

Laws 1895, p. 1302, c. 605, required the bond to discharge a municipal mechanic's lien to be conditioned for the payment of any judgment recovered against defendant on the claim or demand specified in the lien notice.   This was repealed by Laws 1899, p. 359, c. 195, requiring such bond to be conditioned for the payment of any judgment which may be recovered in an action to enforce the lien.   A bond filed 14 days after the passage of the repealing act obligated the surety company as provided by the law in force before such repeal.   *Held*, that the bond should be construed as a substantial compliance with the lien law existing at the time when filed, which, the lien having been discharged under the bond, the surety company should be estopped to deny.

5. SAME—PERSONAL JUDGMENT—LIABILITY OF SURETY.

Under Code Civ. Proc. § 3412, authorizing the recovery of a personal judgment in proceedings to enforce a mechanic's lien, though the lien be invalid, a surety on an undertaking obligating him to pay any judgment recovered in an action to foreclose the lien was liable for a personal judgment rendered, though the lien was held invalid.

6. JUDGMENT—RES JUDICATA—DISMISSAL WITHOUT PREJUDICE.

A judgment in an action to foreclose a mechanic's lien, which expressly provided that the dismissal of the action as to a defaulting lienor should be without prejudice to further proceedings on his part to enforce his claim, did not bar a subsequent action by him on the claim set up in his answer in such former suit, though Code Civ. Proc. § 3402, provides that lienors whose lien is not admitted in the complaint will be deemed to have waived the same unless they answer setting them forth.

7. PARTIES—OBJECTIONS—SUFFICIENCY.
    Under Code Civ. Proc. § 490, providing that an objection for defect of parties must distinctly specify the objection to the complaint, an answer pleading a defect of parties which does not specify the defect is ineffectual.
8. MECHANICS' LIENS—NECESSARY PARTIES.
    In an action to foreclose a municipal mechanic's lien, where the city was not interested in the litigation, and could not be prejudicially affected, it was not a necessary party.
9. PARTIES—REAL PARTY IN INTEREST—ASSIGNOR.
    An assignment of a claim as collateral does not preclude the assignor from bringing an action to enforce the same.
10. SAME—CONTINUANCE BY ORIGINAL PLAINTIFF AFTER TRANSFER OF INTEREST.
    Under Code Civ. Proc. § 756, providing for the continuance of an action by original plaintiff on transfer of interest, unless the court directs otherwise, plaintiffs who assign their claim after instituting suit may, where there is no motion for a substitution, continue the same for the benefit of the assignee who will be bound by the judgment and entitled to the recovery.
    Van Brunt, P. J., and McLaughlin, J., dissent.

Appeal from Trial Term, New York County.

Action by Frank B. Hawkins and George H. Hawkins against the Mapes-Reeves Construction Company and the American Bonding & Trust Company of Baltimore City. From a judgment for plaintiffs, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and LAUGHLIN, JJ.

William F. Kimber, for appellants.

Leo Everett, for respondents.

LAUGHLIN, J. The action was brought to foreclose a mechanic's municipal lien. On the 23d day of April, 1897, the commissioner of public works entered into a contract with appellant, the Mapes-Reeves Construction Company, pursuant to the provisions of chapter 703, p. 1751, of the Laws of 1894, as amended by chapter 399, p. 747, Laws 1895, for the construction of a hospital on Gouverneur Slip. The respondents on the 3d day of June thereafter entered into a contract in writing with the Mapes-Reeves Construction Company for furnishing the iron and steel work required in the construction of the hospital, including all labor and materials incident thereto, for the gross sum of $13,400. It was agreed that the respondents should be paid in installments in conformity to the payments made by the city to the Mapes-Reeves Construction Company under its contract, which called for payments from time to time on the certificate of the architect, of 85 per centum of the value of the work done and materials furnished. The work was delayed beyond the time fixed by the contract, but without the fault of the respondents. For a time the respondents received installment payments in accordance with the contract; but in the month of January, 1899, the certificate of the architect showed that they had done work and furnished material of the value of $10,446, and on this certificate the construction company received, as an installment payment from the city, 85 per cent. of the value of the work on which it had not previously received payment, and of this 85 per cent.

the sum of $1,394.85 became due and payable from the construction company to the respondents. This the construction company refused to pay, upon the theory that it would be more than 85 per cent. of the entire value of the work to be performed by the respondents. The respondents then filed a lien for the amount due and to grow due under their contract, in due form, with the comptroller of the city, and filed another with the president of the department of charities. An undertaking was filed, and the lien was discharged. The respondents refused to proceed with the work on account of the construction company's failure to make the installment payment of $1,394.84, and of its alleged neglect to furnish detailed drawings to enable them to perform their contract. On the issue as to whether the construction company was guilty of a breach of its contract which justified the respondents in abandoning the work, the court found in favor of the latter, and that finding is fairly sustained by the evidence. Upon such breach of contract on the part of the construction company, the respondents became entitled to recover not only the installment then due, but the 15 per cent. of the value of the work done which had been reserved, and for this amount the court decreed judgment against the construction company and its surety.

The appellants contend that the lien was void on account of not having been properly filed; their contention being that it should have been filed with the commissioners of the sinking fund, instead of with the department of charities. Section 5 of the Lien Law (Laws 1897, p. 517, c. 418) gives a lien to those in whose favor a lien is authorized, upon their "filing a notice as prescribed in this article"; and section 12 prescribes that the notice of lien shall be filed "with the head of the department or bureau having charge of such construction and with the financial officer or person charged with the custody and disbursement of the corporate funds applicable to the contract under which the claim is made." We find nothing in the statute indicating that the department of charities had anything to do with the construction of the hospital, and therefore the filing of the notice of lien with that department was a nullity. The Legislature has commanded that the mechanic's lien law should be liberally construed, but this does not permit a construction with relieves the contractor from filing a notice of lien with the proper officers. The statutes under which this building was constructed (chapter 703, Laws 1894, as amended by chapter 399, Laws 1895), authorized the commissioners of the sinking fund, when required so to do by the board of estimate and apportionment, to set apart a part of Gouverneur Slip for the construction of a hospital, and to construct a hospital thereon pursuant to plans and specifications prepared by an architect employed by them. The commissioners of the sinking fund were authorized, after approving plans and specifications, to advertise for proposals for the construction and equipment of the hospital, and to award a contract to the lowest bidder, or to reject the bids and readvertise. It was further provided that the terms of the contract to be entered into by the bidder to whom the work should be awarded should be settled by the corporation counsel and approved by the commissioners of the sinking fund before advertising for proposals; that the bidder should give security

in such sum as should be prescribed by the commissioners of the sinking fund, and in the form prescribed by the ordinances of the city applicable to similar work, but that the adequacy and sufficiency of the security should be approved by the comptroller; that every bidder should deposit with the comptroller a certified check in such amount, not exceeding 5 per cent. of the amount of the security required for the performance of the contract, as the commissioner would prescribe, and in default of his executing the contract, if awarded to him, this was to be forfeited to the city. It was further provided in section 3 of the original act that the contract "when awarded shall be executed by the commissioner of public works of said city under the direction of the aforesaid commissioners in behalf of the mayor, aldermen and commonalty of the city of New York." This provision evidently related to the signing of the contract only, for by section 5 of the original act it is provided that "said contracts when executed, shall be carried out according to their terms, under the direction and supervision of the commissioner of public works." That section further provided that in case the work should be abandoned or unnecessarily delayed, or if, in the opinion of the commissioner, the contractor should willfully violate any provision of the contract, or otherwise in bad faith delay the progress of the work, the commissioner of public works should certify the fact in writing to the commissioners of the sinking fund, who were required to give notice to the sureties of the contractor; and, in case of their failure to continue the work, the commissioner of public works was authorized to notify the contractor to discontinue work, and in that event, with the consent of the majority of the commissioners of the sinking fund, he was authorized to complete the work. Section 6 provided that bonds should be issued by the comptroller on request of a majority of the commissioners of the sinking fund, and the proceeds thereof should be applied to meet the expenses of construction on the requisition of the majority of the commissioners of the sinking fund. The effect of these statutory provisions was to place the commissioner of public works in charge of the construction of this building, and it would seem that the notice of lien should have been filed with him. The statute clearly contemplates the filing of a lien in two places—the one with the "head of the department or bureau having charge" of the construction of the work, and the other "with the financial officer or person" from whom the moneys are to be received. It was, we think, the intention of the Legislature to have this contract performed as are all other contracts made by the commissioner of public works for the construction of buildings for the city. The commissioner of public works and his assistants had the same direction and supervision or charge over this work as over work under other contracts made by the commissioner, except that in case of a breach of the contract by the contractor, it became necessary to report to the sinking fund commissioners, and they had a voice in the subsequent proceedings; otherwise they had nothing to do with the execution of the contract work. Subcontractors had notice that the department of public works was in charge of the execution of this contract work, and that the contract was signed by the commissioner of public works. The reasonable inference from this would be that the

department of public works was the proper place to file the notice of lien, and this, we think, is the effect of the statute.

If these views are correct, the lien was void; but it does not follow, I think, that the judgment cannot be sustained. The complaint demanded a personal judgment against the contractor, and it set forth the facts constituting the plaintiffs' cause of action, which has been satisfactorily proved upon the trial. Section 3412 of the Code of Civil Procedure provides:

"If the lienor shall fail, for any reason, to establish a valid lien in an action, under the provisions of this title, he may recover judgment therein for such sums as are due him, or which he might recover in an action on a contract against any party to the action."

There has been no satisfactory judicial construction of this provision of the Code. The language of the enactment clearly shows a legislative intent to authorize the recovery in the same action upon the contract out of which the indebtedness arose, even though the lien should be declared invalid. This Code provision is a re-enactment of section 15 of chapter 342, p. 589, of the Laws of 1885. The language is significant, in view of the fact that prior to this enactment it had been repeatedly held by the courts that the right to recover a personal judgment was incident to the foreclosure of the lien, and that such recovery could not be had unless a valid lien were established. Weyer v. Beach, 79 N. Y. 409; Borroughs v. Tostevan et al., 75 N. Y. 567. Assuming that there is no valid lien, of course the parties are entitled to a jury trial of the issues arising upon the contract upon which a per-·sonal judgment is demanded; but this provision of the Code may not be declared unconstitutional if it be within the power of the court to give it force and effect without depriving the parties of their constitutional right to a jury trial. I think this may be done either by laying down the rule that in an action to enforce a mechanic's lien, where the validity of the lien is controverted, and therefore under this section of the Code, there is danger that a personal judgment may go against the defendant in the action, either party is entitled to have issues framed and sent to a jury as matter of right, under sections 970 and 974 of the Code of Civil Procedure, or by establishing the practice in such case that in the event the court, on the trial of the issues, determines that the lien is invalid, an interlocutory judgment to that effect should be entered, and the remaining issues sent to a jury, where notice has been given or demand made that in that event a jury trial is desired. In this case, however, there has been no motion to settle the issues, and there has been no demand or suggestion made by either party upon the trial that a jury trial was desired; and therefore, since the defendants had notice that, even though the lien might be declared invalid, a personal judgment might be recovered in the action, they have waived the right to a jury trial. Section 1009, Code Civ. Proc.; Dudley v. Congregation, etc., of St. Francis, 138 N. Y. 451, 34 N. E. 281; Lough v. Outerbridge et al., 143 N. Y. 271, 38 N. E. 292, 25 L. R. A. 674, 42 Am. St. Rep. 712. This is not inconsistent with the opinion expressed by this court in McDonald v. Mayor, 58 App. Div. 75, 68 N. Y. Supp. 462, which was reversed on another point in 170 N. Y. 409, 63 N. E. 437; for that was an action to foreclose a

mechanic's lien filed under local acts to which the provisions of the Code were not applicable, and this section of the Code was not drawn to the attention of the court in the points of counsel, or referred to in the opinion.   It is clear, therefore, that the judgment, as against the Mapes-Reeves Construction Company, should be affirmed.

I think the judgment against the surety company can also be sustained.   The undertaking given by it is conditioned for the payment by the construction company of any judgment that may be recovered against the construction company upon the claim or demand specified in the notice of lien, not exceeding the sum of $6,600.   This was the form of bond required by chapter 605, p. 1302, of the Laws of 1895, which, however, was repealed on the 1st day of April, 1899 (chapter 195, p. 359, Laws 1899), 14 days before this bond was filed.   The bond required by the statute in force at that time to discharge a municipal lien was one "conditioned for the payment of any judgment which may be recovered in an action to enforce the lien."   Subdivision 5, § 20, c. 418, p. 514, Laws 1897, added by chapter 169, p. 318, Laws 1898. It will be observed that the local law applicable to the city of New York in force in 1898, at the time subdivision 5 of section 20 of the lien law was enacted, required the giving of a bond in the form of that given by the surety company in this case, conditioned absolutely for the payment of any judgment that might be recovered in an action against the person liable.   This bond should be construed as ʳ substantial compliance with the lien law existing at the time, and the surety company should be estopped from contending otherwise, since it enabled the contractor to obtain this money, which he otherwise would not have been entitled to.   There is no material difference between the phraseology of this bond, inadvertently prepared in accordance with the local law which had been repealed (chapter 605, Laws 1895), and the undertaking required by the lien law to which reference has been made.   The one was an absolute condition to pay any judgment recovered in an action against the contractor, and the other to pay any judgment recovered against the contractor in an action to enforce the lien; but since the Code at the time of the last enactment permitted the recovery of a personal judgment against the contractor in an action to enforce the lien, even though the lien be invalid, the bond must be deemed to have been made with reference to such a recovery.

A former judgment recovered on the 5th day of November, 1900, in an action to foreclose a lien on this fund, wherein the plaintiffs were defendants, and interposed an answer setting up the same cause of action as is pleaded in the complaint herein, is pleaded in bar.   This action was then pending, having been commenced on the 1st day of July, 1899; but which of the actions was instituted first, does not appear.   Neither was the answer of the surety company, which was a party defendant, served on the plaintiffs, as defendants therein, nor was the answer of the plaintiffs served upon the surety company. These plaintiffs defaulted upon the trial of that action.   Both the decision and judgment therein contained a recital that these plaintiffs failed to appear upon the trial, and that the cause of action set up in their answer was dismissed "without prejudice to any other proceed-

ings to enforce their claim." It is contended that subdivision 3 of section 3402 of the Code of Civil Procedure required these plaintiffs to prove their claim in that action, since it was not admitted by the complaint. The two actions should have been consolidated, as the one was brought, presumably, in ignorance of the commencement of the other (section 3401, Code Civ. Proc.); but, while the clause quoted remains in the decision and judgment, it cannot be successfully contended that the plaintiffs' rights were passed upon in that action, or that the judgment bars their enforcement in this.

The answer of the surety company pleads a defect of parties defendant, but it is ineffectual, since it does not specify the defect. Sections 490, 498, Code Civ. Proc. It is claimed, however, that the city was a necessary party, and should have been joined as a defendant, and that the court should have refused to try the issues without its presence. Steinbach v. Prudential Ins. Co., 172 N. Y. 471, 65 N. E. 281. It does not appear that the city was interested in the litigation, or could be prejudicially affected. It seems to have been conceded that the moneys had been earned, and were due and payable, and had been paid voluntarily upon the filing of the bond and discharge of the lien.

It is also contended that the plaintiff is not the real party in interest. This claim is based upon the fact that prior to filing the lien the plaintiffs assigned their contract as collateral security to the Phœnix Iron Company for materials to be furnished to them for use on this work. This was not an absolute sale of the interests of the plaintiffs, or an assignment of the contract, but a conditional transfer; the plaintiffs remaining the owners until some default by which the transfer was to become absolute, and this never occurred. After the commencement of this action the plaintiffs made a further assignment to the same party of their cause of action upon which this suit is based. There might have been then a substitution of parties plaintiff; but, as no motion for this was made, the plaintiffs have the right to continue the action, and they are, in effect, prosecuting it for the benefit of their assignee, who will be bound by the judgment and entitled to the recovery. Section 756, Code Civ. Proc.

It follows, therefore, that the judgment should be affirmed, with costs. All concur, except VAN BRUNT, P. J., and McLAUGHLIN, J., who dissent.